**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

BRIAN W. RICHARDSON,                  :
                                      :     Civil Action No. 07-5519 (RBK)
                  Petitioner,         :
                                      :
            v.                        :     **OPINION**
                                      :
KAREN BALICKI,                        :
                                      :
                  Respondent.         :


**APPEARANCES:**

Petitioner pro se                    Counsel for Respondents
Brian W. Richardson                  Leslie-Ann M. Justus
South Woods State Prison             Deputy Attorney General
215 Burlington Road South            RJ Hughes Justice Complex
Bridgeton, NJ 08302                  P.O. Box 086
                                     Trenton, NJ 08625


**KUGLER**, District Judge

    Petitioner Brian W. Richardson, a prisoner currently

confined at South Woods State Prison in Bridgeton, New Jersey,

has submitted a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254.  The respondent is Administrator Karen Balicki.

    For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> The victim, Stephen Foster, who was thirty-five years old at the time of trial, testified that he was socializing at Leanna's Bar in Deepwater, on October 25, 2003, when defendant and Dorothy Tighe entered the bar and sat across from him.  According to Foster, defendant left the bar five minutes later and Tighe "started yelling in my ear behind me."  Foster explained that "[a] week before this happened, they tried -- they almost hit me going across the street." He said that Tighe "had been upset because I got upset and yell[ed] at them down ... the street."
>
> Defendant re-entered the bar approximately twenty minutes later and, after sitting with Tighe, "[defendant] got up and started walking towards the front door and -- how do you [say] that word -- antagonize -- tried to get me to go out the door with him."  Defendant was "yelling" at Foster, "threaten[ing] my family, and that's when I actually got up and decided to go out the door with him to settle the matter man to man."  Foster explained that he broke loose from his friend, Rick Stevens, who had been trying to hold him back and
>
> > I proceeded out the door.  I got out the door.  There was two people across the street that were yelling at me.  I really didn't pay attention to them.  I was kind of more -- it was dark outside.  I was kind of focused on what the task at hand was, and before I know

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

> it was like lickety split, I was stuck.  Rick
> was pulling me back in the bar.

> Foster said he was stabbed in the abdomen twice without
> having thrown a punch.  He identified defendant as the
> man who stabbed him.

(Opinion of Superior Court of New Jersey, Appellate Division, at 3-4 (April 4, 2007).)

B.   Procedural History

As a result of the incident at the bar, Petitioner was indicted on charges of first-degree attempted murder, N.J.S.A. 2C:5-1 and 2C:11-3a(1) (count one); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-4 (count two); fourth-degree possession of a weapon under circumstances not manifestly appropriate for lawful use, N.J.S.A. 2C:39-5d (count three); fourth-degree tampering with evidence, N.J.S.A. 2C:28-6(1) (count four); and fourth-degree obstruction of the administration of law, N.J.S.A. 2C:29-1 (count five).

Petitioner was tried with co-defendant Dorothy Tighe, who was charged only with tampering (count four) and obstruction (count five).  Count four was dismissed before trial as to both Petitioner and Tighe, on the prosecutor's motion, and the trial judge granted the motions of Petitioner and Tighe for acquittal on count five after the State rested.

The jury acquitted Petitioner of the attempted murder charge, but convicted him of the lesser included offense of

second-degree aggravated assault, N.J.S.A. 2C:12-1a(1).  He was also convicted on counts two and three.

Petitioner was sentenced on the aggravated assault conviction to a custodial term of seven years with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.  Count three merged with count two and Petitioner was sentenced to a concurrent four-year custodial term on the conviction of possession of a weapon for an unlawful purpose.

On direct appeal, Petitioner raised the same claims presented here: (1) the trial court's refusal to provide a jury instruction explaining that the victim's violent character was relevant to Petitioner's claim of self-defense violated Petitioner's right to due process of law and a fair trial under the Fourteenth Amendment; (2) the improper cross-examination of co-defendant Dorothy Tighe, concerning her opportunity to hear the testimony of other witnesses at the trial, violated Petitioner's right to due process of law and a fair trial under the Fourteenth Amendment; (3) the conviction for possession of a weapon for an unlawful purpose should have been merged with the conviction for aggravated assault, and (4) Petitioner's sentence is manifestly excessive.  The State conceded point three.  On April 4, 2007, the Appellate Division affirmed Petitioner's conviction and remanded the matter to the trial court to correct

the judgment of conviction to reflect that petitioner's conviction for possession of a weapon for an unlawful purpose (count two) merged into Petitioner's conviction for aggravated assault (count one).  The trial court amended Petitioner's judgment of conviction to reflect this merger.[2]

On June 7, 2007, the Supreme Court of New Jersey denied certification.  State v. Richardson, 192 N.J. 71 (2007).  This Petition followed.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[2] Accordingly, this claim is denied as moot.

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court
precedent "if the state court applies a rule that contradicts the
governing law set forth in [Supreme Court] cases," or "if the
state court confronts a set of facts that are materially
indistinguishable from a decision of th[e] Court and nevertheless
arrives at a result different from [the Court's] precedent."
Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J.,
for the Court, Part II).  A state court decision "involve[s] an
unreasonable application" of federal law "if the state court
identifies the correct governing legal rule from [the Supreme]
Court's cases but unreasonably applies it to the facts of the
particular state prisoner's case," and may involve an
"unreasonable application" of federal law "if the state court
either unreasonably extends a legal principle from [the Supreme
Court's] precedent to a new context where it should not apply or
unreasonably refuses to extend that principle to a new context
where it should apply," (although the Supreme Court expressly
declined to decide the latter).  Id. at 407-09.  To be an
"unreasonable application" of clearly established federal law,
the state court's application must be objectively unreasonable.
Id. at 409.  In determining whether the state court's application

6

of Supreme Court precedent was objectively unreasonable, a habeas
court may consider the decisions of inferior federal courts.
Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits
of a claim is entitled to § 2254(d) deference. Chadwick v.
Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v.
Angelone, 528 U.S. 225, 237 (2000)). With respect to claims
presented to, but unadjudicated by, the state courts, however, a
federal court may exercise pre-AEDPA independent judgment. See
Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000),
cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL
1523144, *6 n.4 (D.N.J. 2000). See also Schoenberger v. Russell,
290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and
cases discussed therein).

The deference required by § 2254(d) applies without regard
to whether the state court cites to Supreme Court or other
federal caselaw, "as long as the reasoning of the state court
does not contradict relevant Supreme Court precedent." Priester
v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.
Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19
(2002)).

Although a petition for writ of habeas corpus may not be
granted if the Petitioner has failed to exhaust his remedies in
state court, a petition may be denied on the merits

notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

III.  ANALYSIS

A.  Jury Instruction on Self Defense

Petitioner contends that he was deprived of his Fourteenth Amendment right to due process and a fair trial when the trial court refused to issue his requested jury instruction on self-defense based upon the victim's propensity for violence.  The Appellate Division rejected this claim.

> When asked on direct examination if he had been in "trouble" before, Foster admitted:
>
> > When I was 18 -- I just turned 18 -- I had a run in with a guy, and he was much larger than I was.  I kind of got scared.  So I went home, and I proceeded to get my

8

shotgun.  I went back after the guy,
unloaded, of course.

What transcribed from that was I ended
up giving up the gun, and I got hit in the
face with it and then going to jail for five
days, I believe, $125,000 bail.

Foster explained that he participated in pretrial
intervention and that the charges were dismissed.  He
also admitted that he had been charged with possession
of marijuana at age nineteen and that he pled guilty to
a borough ordinance violation relating to an alleged
shoplifting incident in 1995.

On cross-examination, Foster conceded that he felt
"a little buzzed" when confronted with the fact that
his blood alcohol level was three times the legal
limit.  Foster also denied defense counsel's allegation
that he "punched Ms. Tighe in the face."  Foster
volunteered that he had been charged with simple
assault because of Tighe's allegation that he had
slapped her across the face with an open hand.  He also
denied an allegation that he hit defendant with a pool
cue or that he threatened to kill defendant before he
and defendant left the bar.

...

At the charge conference, relying on State v.
Carter, 278 N.J. Super. 629 (Law Div. 1994), defense
counsel sought an instruction that the jury "should
consider all relevant testimony including that relating
to the violent nature of the alleged victim, and on
such consideration if there exists a reasonable doubt,
even if it exists merely from his previous violent
nature, that then the defendant is entitled to an
acquittal."  Rejecting defendant's request, the judge
explained, "I don't think it would be appropriate to
tell a jury you've heard evidence that the man was
violent when he was 18 years of age ... [a]nd based on
that alone, you, the jury, could conclude that because
of his previous violent nature, aggressiveness or
offenses committed that the defendant is entitled to
acquittal."  The judge agreed to charge self-defense
and, noting that the shotgun incident was "already in
evidence," indicated that it was fair for defense
counsel to argue that the victim was "a violent man."

In accordance with the court's direction, defense counsel argued in his closing that defendant acted in self defense:

> Was [defendant] acting in self-defense? Well, the Judge will give you the law on what constitutes self defense.  I just would remind you though that [defendant] was saying, "If you come out here, I'm going to have no ability but to defend myself, if you come out here."  They had both been making remarks to each other inside the bar.  but [defendant] had left the bar. [Defendant] was already in the middle of the street. [Defendant] had no place else to go.
>
> [Defendant] had already been struck with the cue stick by Steven Foster in this case.

He also asserted that the incident at issue "was initiated by a mean drunk named Steven Foster."

...

Defendant argues that the trial court erred when it refused to instruct the jury "to consider whether ... evidence of the victim's violent nature raised a reasonable doubt about defendant's guilt."  We do not quarrel with the proposition that a victim's violent character might be relevant nature to prove that the victim initiated the confrontation and required defendant to act in self-defense.  See [State v. Carter, 278 N.J. Super. 629, at 633-34 (Law Div. 1994)]; N.J.R.E. 404 (a)(2).

That violent character, however, must be established by appropriate proof.  N.J.R.E. 405(a) permits character to be proven by reputation, opinion or criminal conviction.  It prohibits the use of "[s]pecific instances of conduct not the subject of a conviction of a crime" to prove character.  See State v. Conyers, 58 N.J. 123, 133 (1971).  There was no appropriate proof of the victim's "violent nature" and the instruction sought by defendant was not supported by evidence in the record.  Moreover, the judge determined that the incident was simply too remote to be probative of character.  See N.J.R.E. 403.  That ruling was discretionary and we have no reason to

disturb it.  See State v. Nelson, 173 N.J. 417, 470
(2002).  Defendant was, nevertheless, permitted to
argue the victim's violent character on evidence that
does not support the claim.  He received more than that
to which he was entitled and he has no basis for
complaint.

(Opinion of Appellate Division at 4-9.)

Generally, a jury instruction that is inconsistent with

state law does not merit federal habeas relief.  Where a federal

habeas petitioner challenges jury instructions given in a state

criminal proceeding,

[t]he only question for us is "whether the ailing
instruction by itself so infected the entire trial that
the resulting conviction violates due process."  It is
well established that the instruction "may not be
judged in artificial isolation," but must be considered
in the context of the instructions as a whole and the
trial record.  In addition, in reviewing an ambiguous
instruction ..., we inquire "whether there is a
reasonable likelihood that the jury has applied the
challenged instruction in a way" that violates the
Constitution.  And we also bear in mind our previous
admonition that we "have defined the category of
infractions that violate 'fundamental fairness' very
narrowly."  "Beyond the specific guarantees enumerated
in the Bill of Rights, the Due Process Clause has
limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations

omitted).  Thus, the Due Process Clause is violated only where

"the erroneous instructions have operated to lift the burden of

proof on an essential element of an offense as defined by state

law."  Smith v. Horn, 120 F.3d 400, 416 (1997).  See also In re

Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause

protects the accused against conviction except upon proof beyond

a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it generally is subject to "harmless error" analysis.  Smith v. Horn, 120 F.3d at 416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless."  Id. at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)).  In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

However, a jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden [of proof beyond a reasonable doubt] is plainly inconsistent with the

constitutionally rooted presumption of innocence." <u>Cool v.</u>
<u>United States</u>, 409 U.S. 100, 104 (1972).  "[T]rial courts must
avoid defining reasonable doubt so as to lead the jury to convict
on a lesser showing than due process requires." <u>Victor v.</u>
<u>Nebraska</u>, 511 U.S. 1, 22 (1994); <u>see also</u> <u>Cage v. Louisiana</u>, 498
U.S. 39, 41 (1990).  As the Supreme Court explained in <u>Victor</u>,

> so long as the court instructs the jury on the
> necessity that the defendant's guilt be proved beyond a
> reasonable doubt, the Constitution does not require
> that any particular form of words be used in advising
> the jury of the government's burden of proof.  Rather,
> taken as a whole, the instructions [must] correctly
> conve[y] the concept of reasonable doubt to the jury.

<u>Victor</u>, 511 U.S. at 6 (citations and internal quotation marks
omitted).

Here, the Appellate Division has determined that the refusal
to give the requested instruction complied with state law.  The
trial court did, in fact, instruct the jury with respect to the
defense of self-defense, including instructing the jury that the
State has the burden of proof beyond a reasonable doubt that the
defense of self-defense is untrue.  (Tr. 5 at 167-75.)  Taken as
a whole, nothing in the jury charge operated to lift the State's
burden of proof.  The conclusion of the state courts is neither
contrary to, nor an unreasonable application of, clearly
established federal law, nor is the decision of the state courts
based on an unreasonable determination of the facts in light of

the evidence presented.  Petitioner is not entitled to relief on this claim.

B.   <u>Cross Examination of Dorothy Tighe</u>

Petitioner contends that he was deprived of his Fourteenth Amendment right to due process and a fair trial by the prosecution's cross-examination of co-defendant Dorothy Tighe about her presence at trial prior to her testimony, questioning intended to challenge Tighe's credibility by exposing the possibility that she could have tailored her testimony based upon the testimony she had witnessed.  The Appellate Division rejected this claim.

> At the close of the State's presentation, the obstruction charge was dismissed against both defendant and Tighe and the judge explained to the jury that "the dismissal as to Ms. Tighe [meant] that she [was] no longer a defendant in this case."  Defendant then called Tighe as a witness.

> She testified that she and Foster "had gotten into an altercation" that became physical when he "smacked" her in the face.  She claimed that, when defendant re-entered the bar, she told him what had happened between her and Foster and that defendant had words with Foster.  She explained that Foster "stood up and told [defendant] that he was going to kill him" and struck defendant with a pool cue.  Tighe testified that after she saw Foster hit defendant, she tried to reach him but was pulled back by Foster's girlfriend.  She said that she did not see defendant again until everyone was thrown out of the bar, at which point she and defendant left and went to another local bar, approximately "three or four minutes away," where they were arrested.

> On cross-examination, the prosecution asked Tighe the following questions:

```
Q.    Now, ma'am, up until about 20 minutes
      ago, you were a defendant in this case,
      is that correct?

A.    Yes.

Q.    Had the opportunity to watch the
      witnesses?

A.    Yes.

Q.    Had the opportunity to discuss the
      discovery with your attorney?

A.    Yes.

Q.    So you're familiar with the allegations
      that the State is making against your
      boyfriend, [the defendant], is that
      correct?

A.    Yes.
```

Defendant made no objection to this line of
questioning.

...

    The State's summation sought to discredit the
testimony of Tighe by arguing bias: "[S]he's the one
who is the mother of the defendant's children, lived
with him for over ten years. ... She's the only one
here who has the prior conviction for theft by
deception."

...

    Defendant also argues that he "was deprived of the
right to due process of law and a fair trial" because
the prosecution "unfairly suggested that Ms. Tighe's
status as a [former] defendant allowed her to observe
witnesses and to tailor her testimony."  Citing State
v. Daniels, 182 N.J. 80 (2004), defendant argues that
the prosecution's questions relating to Tighe's
presence in the courtroom before her testimony unfairly
insinuated that Tighe's testimony was not credible
because she exercised her constitutional right to be
present at the trial.

Since there was no objection at trial, we review the claim under the plain error doctrine, R. 2:10-2, and "disregard an error unless it is 'clearly capable of producing an unjust result.'" <u>Daniels</u>, <u>supra</u>, 182 N.J. at 95 (quoting R. 2:10-2). An error is capable of proving an unjut result where it raises "a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached." <u>State v. Macon</u>, 57 N.J. 325, 336 (1971).

We conclude that <u>Daniels</u> is inapplicable. That case concerned a prosecutor's comments upon a <u>defendant's</u> opportunity, obtained by the exercise of a constitutional right, to tailor testimony because of an ability to hear other witnesses. <u>Daniels</u> simply does not speak to this situation. Moreover, it is not clear that the prosecution's limited questioning of Tighe regarding her presence at trial had the effect of implying that Tighe had tailored her testimony. The failure to object suggests that the questioning was not improper and that there was, in any event, no prejudice. <u>See</u> <u>State v. Frost</u>, 158 N.J. 76, 83-84 (1999).

Finally, we are satisfied that the questions to which defendant now objects were not "clearly capable of producing an unjust result." R. 2:10-2. The four questions posed were asked at the beginning of a lengthy cross-examination, and the prosecution refrained from arguing in its closing that Tighe's presence in the courtroom allowed her to tailor her testimony.

(Opinion of Appellate Division at 5-11.)

In <u>Portuondo v. Agard</u>, 529 U.S. 61 (2000), the Supreme Court rejected a claim that a prosecutor's comments on a criminal defendant's presence, and on the ability to fabricate that it afforded him, unlawfully burdened the defendant's Sixth Amendment right to be present at trial and to be confronted with the witnesses against him or his Fifth and Sixth Amendment rights to testify on his own behalf. The Court noted "it <u>is</u> natural and

16

irresistible for a jury, in evaluating the relative credibility of a defendant who testifies last, to have in mind and weigh in the balance the fact that he heard the testimony of all those who preceded him." Id. at 67-68 (emphasis in original).  The Court also noted that, when a defendant assumes the role of witness, "'his credibility may be impeached and his testimony assailed like that of any other witness.'" Id. at 69 (quoting Brown v. United States, 356 U.S. 148, 154 (1958)).  The Court similarly rejected the claim that such commentary on credibility violates a defendant's right to due process under the Fourteenth Amendment, even where a defendant is required to attend his trial.  Id. at 74-75.

In State v. Daniels, 182 N.J. 80 (2004), the Supreme Court of New Jersey found, as a matter of state law, that although not unconstitutional, certain prosecutorial accusations of a defendant "tailoring" his testimony undermine the principle that a defendant is entitled to a fair trial.  Id. at 97-102 (citing Portuondo, 529 U.S. at 73 n.4 "Our decision, in any event, is addressed to whether the comment is permissible as a constitutional matter, and not to whether it is always desirable as a matter of sound trial practice.  The latter question, as well as the desirability of putting prosecutorial comment into proper perspective by judicial instruction, are best left to

trial courts, and to the appellate courts which routinely review their work.").

Here, as noted by the Appellate Division, the challenged examination on credibility was directed not at Petitioner, the defendant, but at another witness who was then no longer a defendant in the matter.  Petitioner has directed this Court to no case suggesting any impropriety in such questioning, nor has this Court located any such case.  Indeed, in light of the holding of <u>Portuondo</u> that examination or commentary on the issue of credibility is not improper even with respect to the criminal defendant witness, the questioning of Tighe was entirely proper. Petitioner is not entitled to relief on this claim.

C.   <u>The Sentence</u>

Petitioner challenges the length of his sentence.  He contends that the totality of mitigating circumstances in the record warranted a lesser sentence.  <u>See</u> N.J.S.A. 2C:44-1.  The Appellate Division rejected the claim.

> Defendant's arguments with respect to his sentence are without merit.  The sentence imposed was well within the judge's discretion and he fairly weighted the appropriate aggravating and mitigating factors.  We have no warrant to interfere.  <u>See</u> <u>State v. Jarbath</u>, 114 N.J. 394, 410 (1989) (the power to modify a sentence must be "used only sparingly: when trial courts are 'clearly mistaken' and 'the interests of justice demand intervention and corrections.'") (quoting <u>State v. Johnson</u>, 42 N.J. 146, 162 (1964))).

(Opinion of Appellate Division at 11.)

This claim is based exclusively upon an alleged error of state law.  It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))).  Accordingly, Petitioner is not entitled to relief on this claim.

IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.


                                        S/Robert B. Kugler
                                        Robert B. Kugler
                                        United States District Judge

Dated: October 17, 2008

20